UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT SANTANA, | Case No.: 09-CV-03226-LHK |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

Defendants Curry, Dayalan, Friederichs, and Trevino moved to dismiss Plaintiff Robert Santana's First Amended Complaint ("FAC," Dkt. No. 17). Dkt. No. 20 ("Mot. to Dismiss"). Defendants Adams, Nyenke, and Flores later joined the motion. Dkt. Nos. 22, 30, 33. Defendants Kahng and Saylor have yet to be served at the time of this order. For the reasons stated below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**I. BACKGROUND**

On July 15, 2009, Plaintiff filed his original complaint. Dkt. No. 1. After Judge Ware dismissed the complaint with leave to amend, Dkt. No. 16, Plaintiff filed his FAC. In it, Plaintiff makes the following allegations.

In January, 2005, Plaintiff began serving a six year sentence within the California State Prison system at Monterey County Jail. FAC ¶ 19. At the time of his incarceration, Plaintiff

suffered from diabetes and diabetic neuropathy. *Id.* ¶ 18. As a result of these medical issues, Plaintiff's right ankle had bones that were unsupported, a condition also known as "Charco Joint." *Id.* To provide support to his ankle and help regulate its blood flow, Plaintiff wore a custom designed orthotic device called a "camwalker." *Id.* On or about January 31, 2005, Plaintiff was transferred from Monterey County Jail to North Kern State Prison where his camwalker was confiscated. *Id.* ¶ 19. According to Plaintiff, he was told that because his camwalker contained metal, it presented a threat to internal security. *Id.* He claims that he was told possession of metal by inmates was strictly prohibited. *Id.*

During his time at North Kern, Plaintiff's foot was X-rayed and radiologist T. Maclennan, M.D. interpreted the X-ray. *Id.* ¶ 20. Plaintiff claims that Maclennan noted "marked deformity at the ankle" and indicated that "follow-up foot films" should be considered. *Id.* Plaintiff alleges, however, that he did not receive any further medical consultation during his time at North Kern. *Id.*

Plaintiff subsequently moved to a Correctional Training Facility in Soledad, California. *Id.* ¶ 21. On August 30, 2005, Defendant N. Dayalan, M.D. examined Plaintiff and allegedly noted that he needed to see an orthopedist in order to address problems with his Charco Joint. *Id.* These problems allegedly included skin loss and Plaintiff's need for an orthotic bracing device. *Id.* Specifically, Plaintiff claims that Dayalan suggested that a podiatry referral for diabetic shoes was necessary. *Id.* According to Plaintiff, however, he was not seen by a podiatrist nor did he receive any further follow-up care based on Dr. Dayalan's recommendations. *Id.*

Plaintiff was transferred once again on April 13, 2006 to a California State Prison in Corcoran. *Id.* ¶ 22. One day later, Defendant K. Saylor, M.D. examined Plaintiff, diagnosed him with diabetes, and enrolled him in a chronic care program. *Id.* Later, on May 18, 2006, Defendant J. Kahng, M.D. examined Plaintiff and issued him a wheelchair. *Id.* Nevertheless, Plaintiff claims that no immediate medical attention was given to his right foot. *Id.*

On July 5, 2006, Dr. Smith examined Plaintiff and recommended that Plaintiff be evaluated by orthotics for an ankle brace. *Id.* ¶ 23. Just over a month later on August 11, 2006, Plaintiff visited the Orthotics Clinic and was measured for a right foot and ankle camwalker. *Id.* ¶

2

24. Plaintiff alleges that his ankle and foot had a one and a half inch heel and sole buildup at that time. *Id.* On August 22, 2006, Plaintiff received an egg crate mattress and wheel chair gloves and had his medications reviewed and renewed. *Id.* ¶ 25. Plaintiff then received his camwalker on September 19, 2006. *Id.* ¶ 26. Plaintiff claims that because it did not fit and irritated his skin, he could not wear it, and it provided no benefit. *Id.*

On July 19, 2007, Plaintiff was released from the California State Prison system. *Id.* ¶ 28. After release, Plaintiff sought private medical care in Salinas, California on August 6, 2007. *Id.* Plaintiff alleges that he sought this care due to the "widened and swollen condition of his foot." *Id.* According to Plaintiff, his private medical provider informed him that the medical care he received while in prison was "substandard and caused his current condition of a widened and swollen foot and ankle which need[ed] surgical repair." *Id.*

Plaintiff claims that Defendants, under color of state law, acted with deliberate indifference toward his health and safety in violation of 42 U.S.C. § 1983. *Id.* ¶ 30. As a result, Plaintiff claims that he suffered a "significant exacerbation" of his diabetic symptoms. *Id.* These included a "greatly deformed right foot, [an] inability to walk normally and properly" and the need to excise approximately 4.5 inches of his heel. *Id.*

## II. LEGAL STANDARD

Under FED. R. CIV. P. 12(b)(6), parties can move for dismissal of a pleading on the grounds that it "fail[s] to state a claim upon which relief can be granted." This is a challenge to the "legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Though factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation omitted). When considering a motion to dismiss under FED. R. CIV. P. 12(b)(6), courts must "accept as true the facts alleged in the complaint," *Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1171 (9th Cir. 1999), and "must draw inferences in the light most favorable to the plaintiff," *Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009) (citation omitted). This does not, however, apply to legal conclusions. *See Iqbal*, 129 S. Ct.

at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. ANALYSIS

Defendants offer two separate arguments in support of their motion to dismiss. First, Defendants argue that the claim for relief presented in Plaintiff's FAC is barred by the applicable statute of limitations. Mot. to Dismiss 4. Second, Defendants argue that Plaintiff's claim fails as a matter of law. *Id.* at 5.

A.  Statute of Limitations

Defendants and Plaintiff agree on the applicable statute of limitations. Mot. to Dismiss 4; Dkt. No. 39 ("P.'s Opp'n"). "Congress provided no federal statute of limitations for claims brought under 42 U.S.C. § 1983." *McDougal v. County of Imperial*, 942 F.2d 668, 672 (9th Cir. 1991). Nevertheless, "the Supreme Court has held that because § 1983 actions are best characterized as actions for injuries to personal rights, courts should borrow the state statute of limitations that applies to personal injury actions." *McDougal*, 942 F.2d at 672 (citing *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). Furthermore, whether any tolling period is available is also governed by state law. *Hardin v. Straub*, 490 U.S. 536, 539 (1989). In California, a two year statute of limitations applies to personal injury actions, CAL. CIV. PROC. CODE § 335.1, and inmates sentenced "for a term less than life" have up to two years of statutory tolling for damage claims that accrue while they are incarcerated, CAL. CIV. PROC. CODE § 352.1(a), (c).

Where Defendants and Plaintiff disagree is when the statute of limitations for Plaintiff's claim began to run. Plaintiff filed his original complaint on July 15, 2009. That is less than two years from the date when he was released from prison, July 17, 2007. Assuming tolling for two full years in addition to the two year statute of limitations, the only way Plaintiff's claim is barred by the statute of limitations is if it accrued before July 15, 2005.[1]

---

[1] There are two basic scenarios under which Plaintiff's filing is not barred by the statute of limitations. First, Plaintiff filed within the two year California statute of limitations. Under this scenario, Plaintiff's cause of action could have accrued on or after July 15, 2007, two days before he was released from prison. Second, Plaintiff filed his complaint within the time provided by the statute of limitations with the benefit of tolling. Under this scenario, Plaintiff's cause of action could have accrued on or after July 15, 2005, four years from the date Plaintiff filed his complaint.

4

Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

"Federal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 action." *Elliott v. City of Union City*, 25 F.3d 800, 801-02 (9th Cir. 1994) (citation omitted). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In a case such as this one, where an alleged constitutional violation (or constitutional injury) produced an alleged physical injury, it is not clear which one provides the basis for Plaintiff's action. This court is not the first to note this ambiguity. Another district court in the Ninth Circuit observed that "[t]here is some debate about what constitutes the 'injury' resulting from deliberate indifference to a serious medical need. Two empirically distinct injuries are: (1) lack of medical care that is cruel and unusual punishment and (2) the bodily injury that flows from the lack of medical care." *Payne v. Arpaio*, 2009 WL 3756679, *7 (D. Ariz. Nov. 4, 2009) (citing *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991) (noting generally that civil rights claims under § 1983 accrue when the "plaintiff knows or should know that his or her constitutional rights have been violated")). After citing Ninth Circuit cases in favor of both positions, the court went on to conclude that the right definition depends on the facts of the case. *Id.* at *9.

Neither of the parties in this case takes a clear position on what they perceive the injury to be. They do, however, take clear positions on when, in their view, Plaintiff knew of or had reason to know of his injury. The Court will address the dates of accrual proposed by each party, and the arguments the parties present in favor of those dates, in turn.

1. August 2007

According to Plaintiff, his claim did not accrue until August 2007 because only at that time did he "discover[] the true extent of his injury" and discover that Defendants' failure to provide adequate medical care [had] caused his foot's deformity. P.'s Opp'n 4. The Court reads Plaintiff's general argument to consist of two basic arguments. Plaintiff's first fundamental argument is that his claim did not accrue until he discovered both the injury to his foot and its cause. In support of this legal proposition, Plaintiff relies on *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1981), which states that "the statute of limitations does not begin to run, until the plaintiff has discovered, or in the exercise of reasonable diligence, should have discovered, both his injury and

5

its cause." (citation omitted); *see also Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (Accrual occurs not on the date when "the wrong that injures the plaintiff occurs, but [on] the date--often the same, but sometimes later--on which the plaintiff discovers that he has been injured."). According to Plaintiff, this did not occur until he consulted a private physician who informed him that Defendants' failure to provide adequate medical care had caused significant deformity in his foot. P.'s Opp'n 5.

Even if this Court were to agree that this rule applies to this case, Plaintiff recognizes that this argument may be stretching the facts. He admits that "it may be said that [he] should have known of his injury" on September 19, 2006. P.'s Opp'n 6. On that date, Plaintiff received a replacement boot for his injured foot. *Id.* When he tried to place the boot on his foot, it did not fit. *Id.* In fact, he discovered that "his foot had become widened and swollen." FAC ¶ 27. Furthermore, on August 11, 2006, when Plaintiff was fitted for the replacement boot, his foot was measured and found to possess a one and a half inch heel and sole buildup. FAC ¶ 24. Given that these events occurred nearly a year before Plaintiff saw his private physician, Plaintiff had reason to know that his foot was injured before August 2007. And since Plaintiff was within the exclusive care of the prison system from the time his camwalker was taken until he discovered the deformity in his foot, he had reason to know that the medical care he was receiving in prison was the cause of his injury.

Plaintiff's other argument in favor of August 2007 is that he did not discover the full extent of his foot injury until that time. Defendants argue that such a rule would be legally unsound, citing a Seventh Circuit case, *Massey v. United States*, 312 F.3d 272 (7th Cir. 2002), in support of their argument. In that case, the court held that "the statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later." *Massey*, 312 F.3d at 278 (citations, quotation marks, and brackets omitted). According to the court, if this were not the rule, "the statute of limitations might be extended indefinitely--perhaps even to death, since until then it is always possible that the plaintiff's injury will worsen." *Id.* (citation and quotation marks omitted).

6

Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Defendants' argument is persuasive. Plaintiff here is complaining of an injury to his foot that is the result of allegedly improper medical care that he received while in prison. If the statute of limitations on his action did not accrue until his foot injury ceased becoming more serious, it may still not have started. As the Supreme Court recently articulated, it is "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action[,] that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (citations and quotation marks omitted). Plaintiff does not need to wait until his foot stops becoming deformed to file suit. The presence of a serious medical need and deliberate indifference to that need are all that is required.[2]

### 2. January 31, 2005

Defendants argue that Plaintiff's claim accrued on January 31, 2005 when Plaintiff's camwalker was confiscated. In their reply brief, Defendants state that "[a]bsent the confiscation of his camwalker on January 31, 2005, [Plaintiff] does not allege that Defendants took any specific action that constituted deliberate indifference." Dkt. No. 40 ("Defs.' Reply"), at 2. They go on to suggest that the accrual of Plaintiff's claim is not dependent on his knowledge of his foot's deformity. *Id.* Rather, they argue that because Plaintiff knew of his chronic conditions at the time of confiscation, he "knew or had reason to know of his injury at the time his camwalker was confiscated." *Id.* at 2-3. Furthermore, Defendants argue that "but for the January 31, 2005 confiscation of his camwalker, [Plaintiff] would not have been injured." Mot. to Dismiss 4. Plaintiff rejects Defendants' theory. He claims that he suffered no injury on January 31, 2005 and that the confiscation of his camwalker was not defendants' wrongful act. P.'s Opp'n 4.

Defendants' argument hinges on two characterizations of the January 31, 2005 confiscation. First, Plaintiff must have been injured on that day. Second, Plaintiff must have had knowledge or reason to know of his injury on that day. In support of this characterization, Defendants attempt to analogize the facts in this case with those of *Massey*. In *Massey*, the Seventh Circuit affirmed the

---

[2] For a discussion of the legal standards governing actions for deliberate indifference to serious medical needs, see *infra* Part III.B of this opinion.

7

Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

district court's granting of summary judgment for the defendants because the inmate plaintiff had failed to file within the period allowed by the applicable statute of limitations. Plaintiff suffered from a hernia and was allegedly told by a doctor that he needed immediate surgery. When the surgery did not happen, plaintiff's physical pain increased. His attorney eventually wrote a letter stating that the delay in surgery was exacerbating the plaintiff's condition and threatening his life. Even though it reasoned that the plaintiff's claim probably accrued during the time that his pain increased, the court held that plaintiff's claim accrued no later than when the attorney sent his letter. According to the court, the letter showed that the plaintiff knew his injury--his increased pain--was due to the actions of the prison medical staff.

Defendants' analogy falters in two important respects. First, the plaintiff's claim in *Massey* accrued when he suffered a physical injury: increased pain. Plaintiff in this case, however, has not alleged that he suffered any physical pain when his camwalker was confiscated. Rather, he claims, like the plaintiff in *Massey*, that increased pain and deformity in his foot occurred gradually. Analogizing the cases in this way, Plaintiff's claim here did not occur until he became aware of the increased pain and deformity in his foot.

Second, *Massey* undercuts Defendants' argument that Plaintiff should have known of his injury when his camwalker was confiscated. In *Massey*, the plaintiff must have known that if he did not receive the proper treatment for his hernia, he would suffer future pain. Nevertheless, the court did not find that his claim had accrued until he actually suffered pain as a result of the allegedly unreasonable delay in treatment. It would have been unreasonable for the court to expect that the plaintiff in *Massey* could have anticipated that the prison medical staff would negligently delay his treatment in such a way as to cause him severe pain. Yet, Defendants want that rule to apply in this case.

Defendants argue that because Plaintiff knew of his Charco Joint condition, he had reason to know of his injury when his camwalker was confiscated. Plaintiff, however, had no reason to know that the confiscation of his camwalker would result in a serious foot injury. This is not to say that Plaintiff would not have had reason to know that a permanent confiscation with no subsequent medical treatment would result in a serious foot injury. From Plaintiff's FAC, it is apparent that he

8

Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

knew of his "Charco Joint" and his need for a camwalker. Based on Plaintiff's FAC, however, it is not clear that he knew the January 31, 2005 confiscation would leave him without the benefit of any camwalker for the foreseeable future. Plaintiff claims that the camwalker, which allegedly contained metal, was confiscated because it presented a risk to prison security. According to Plaintiff, the prison strictly prohibited the possession of metal by inmates. The reasonable inference from these facts, drawn in favor of Plaintiff, is that he, like the inmate in *Massey*, must have anticipated proper future medical care despite the confiscation. This also undermines Defendants' reliance on *Ngo v. Woodford*, 539 F.3d 1108 (9th Cir. 2008). Unlike the plaintiff in *Ngo*, who knew that the prison's initial determination to preclude him from certain programs was final, Plaintiff here had every reason to anticipate that the confiscation of his camwalker was not a final determination to deny him proper medical care for over a year.

The Supreme Court's holding in *Wallace* also undercuts Defendants' argument here. Under *Wallace*, a claim accrues when "the plaintiff can file suit and obtain relief." 549 U.S. at 388 (citation omitted). As Plaintiff's counsel pointed out at oral argument, if Plaintiff had brought suit for deliberate indifference on February 1, 2005, it is unlikely that Defendants would have conceded that Plaintiff had been injured at the time his camwalker was confiscated.

### 3. June 22, 2005

Defendants also advance a theory that Plaintiff's injury accrued on June 22, 2005. Mot. to Dismiss 4. In support of this theory, they cite facts from Plaintiff's original complaint. *Id.* They, however, do not cite any legal authority authorizing them to look beyond Plaintiff's FAC. The general rule is that courts do not consider material outside of the complaint on a Rule 12(b)(6) motion. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Although courts may consider outside evidence under certain conditions, *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations and quotation marks omitted), the weight of federal authority suggests that previous complaints do not generally fall within those exceptions: "It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading . . . cannot be considered by the court on a motion to dismiss the amended complaint." *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998)

9

Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

1   (refusing, on a Rule 12(b)(6) motion, to consider facts in an original complaint not present in an
2   amended complaint); *see In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928
3   (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint
4   and renders the original complaint without legal effect.") (citation omitted); *Young v. City of Mount
5   Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) ("an amended pleading ordinarily supersedes the original
6   and renders it of no legal effect") (citation and quotation marks omitted); *In re Crysen/Montenay
7   Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000) ("It is well settled that an amended pleading
8   ordinarily supersedes the original and renders it of no legal effect."); *Loux v. Rhay*, 375 F.2d 55,
9   57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter being treated
10  thereafter as non-existent.") (citing cases); *see also Hibernia Nat. Bank v. Carner*, 997 F.2d 94,
11  101 (5th Cir. 1993) (refusing, on a motion for summary judgment, to consider facts pled in
12  plaintiff's initial complaint because they did not appear in plaintiff's amended complaint).

13  At oral argument, Defendants' counsel argued that Plaintiff's representations in his original complaint constituted judicial admissions and must be accepted by this Court. Defendants' counsel is correct that "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quoting *In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)) (internal quotations omitted). Defendants' argument fails, however, because "[f]actual assertions in pleadings . . . , *unless amended*, are considered judicial admissions conclusively binding on the party who made them." *Id.* (emphasis added) (citations omitted). Because Plaintiff's FAC does not contain any allegations or claims relating to June 22, 2005, the Court will not further consider Defendants' argument that Plaintiff's cause of action accrued on that day.[3]

24          4.  Other Possible Dates of Accrual

25  The Court has rejected August 2007, January 31, 2005, and June 22, 2005 as possible dates
26  on which Plaintiff's claim accrued. Though it is possible that Plaintiff's cause of action did accrue

---

[3] This Court also did not consider facts cited by Defendants from Plaintiff's original complaint in support of their other arguments.

before July 15, 2005, because Defendants have failed to show that it is clear from the face of the complaint that Plaintiff did not timely file, their motion to dismiss on statute of limitations grounds must fail. *See Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n.1 (9th Cir. 1987) (citing *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)) ("Although the statute-of-limitations defense is usually raised in a responsive pleading, the defense may be raised in a motion to dismiss if the running of the statute is apparent from the face of the complaint.") (internal citation omitted). Drawing all inferences in favor of Plaintiff, this Court cannot conclude at this time that Plaintiff's claim is barred by the relevant statute of limitations.[4]

### B. Failure as a Matter of Law

Defendants also argue that Plaintiff's claim is deficient as a matter of law. "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations, footnotes, and quotations omitted). "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and quotations omitted); *see also Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("Our cases make clear that mere negligence in the provision of medical care does not constitute a constitutional violation.") (citation omitted); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment. However, the officials' conduct must constitute unnecessary and wanton infliction of pain before it violates the Eighth Amendment. This is not an easy test for Plaintiffs to satisfy." *Hallett v. Morgan*, 296 F.3d 732, 744-45 (9th Cir. 2002) (citations and quotations omitted).

---

[4] Plaintiff also asked this court to consider "equitable factors" when determining his cause of action's date of accrual. The Court need not reach that issue. Moreover, the Ninth Circuit generally disfavors dismissing complaints where tolling is involved. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993).

Plaintiffs must make two basic showings in every deliberate indifference to medical needs claim. "First, an inmate must demonstrate that the deprivation suffered was objectively, sufficiently serious. Then, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (citations and quotations omitted).

Most courts focus their attention on the second required element. Plaintiffs "must show [both] that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quoting *Gamble*, 429 U.S. at 105). "An *accident,* although it may produce added anguish, is not on that basis *alone* to be characterized as wanton infliction of unnecessary pain sufficient to demonstrate deliberate indifference, nor does an *inadvertent* failure to provide adequate medical care by itself to [sic] create a cause of action under § 1983." *Id.* (quoting *Gamble*, 429 U.S. at 105) (quotations omitted). "[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference." *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

"The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (citation omitted); *see Wallin v. Norman*, 317 F.3d 558, 562 (6th Cir. 2003). "In determining deliberate indifference, [courts] scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect." *Wood*, 900 F.2d at 1334 (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir.1986)).

Defendants first argue that Plaintiff's FAC catalogs significant medical attention to his condition. Defs.' Reply 5. They point out that he saw "no less than five physicians, received x-rays, a podiatry referral, a consult with an orthopedic surgeon, a wheelchair, wheelchair gloves, an

12

egg crate mattress, and even a new 'camwalker.'" *Id.* Defendants also direct the Court's attention to the fact that the FAC contains no allegations against Defendants Adams, Curry, Flores, Friederichs, Nyenke and Trevino.

In arguing that his FAC fully complies with federal pleading standards, Plaintiff appears to rely principally on the fact that he did not receive a replacement camwalker until September 19, 2006, long after his own camwalker was confiscated on January 31, 2005. P.'s Opp'n 9. He also relies on several incidents where, even though doctors indicated that he required follow-up treatment, he received no further medical assistance based on their recommendations. *Id.* at 9-10. Finally, Plaintiff argues in his brief that the wardens had power to approve and oversee all his medical treatment and neglected to do so. *Id.* at 10.

Defendants' argument that Plaintiff received a significant amount of medical attention while in prison does not persuade this Court that Plaintiff's pleadings are deficient as a matter of law. The law does not require general indifference to a plaintiff. As stated above, to make out a claim for deliberate indifference a plaintiff must show that he suffered an objectively serious deprivation and that those who deprived him did so with a sufficiently culpable state of mind. The fact that Plaintiff received as much medical attention as he did does not, alone, preclude him from satisfying either of these elements. *See Strain v. Sandham*, 2009 WL 172898, *6 (E.D. Cal. Jan. 23, 2009), *adopted in full by Strain v. Sandham*, 2009 WL 500728 (E.D. Cal. Feb. 26, 2009) ("A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case.") (citing *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989)).

Although this Court does not accept Defendants' first argument, their argument that the FAC fails to state a claim against Defendants Adams, Curry, Flores, Friederichs, Nyenke and Trevino is persuasive. As to Defendants Trevino and Curry (and presumably Adams), Defendants argue that the FAC is trying to impose liability through respondeat superior or vicarious liability. Mot. to Dismiss 5. As a general rule, these theories of liability are not available in a § 1983 action. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978); *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). The only exception is "if the supervisor participated in or directed the

13

violations or knew of the violations and failed to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

The only claims in the FAC directly associated with Defendants Trevino, Curry, and Adams are that they "had final approval of all actions occurring within" their prison, "including oversight and approval of medical care provided to [P]laintiff." FAC ¶¶ 5-7. These statements alone do not raise a right of relief against these Defendants beyond a speculative level. The single fact that these Defendants had supervisory authority in prisons where Plaintiff resided does not create a plausible claim that they intentionally interfered with Plaintiff's medical treatment. Even if this Court were to accept Plaintiff's argument that the wardens had power to approve and oversee all his medical treatment and neglected to do so, P.'s Opp'n 10, this would not state a plausible claim. Pure neglect does not satisfy the deliberate indifference standard, *see Wood*, 900 F.2d at 1334, nor does it support liability through respondeat superior or vicarious liability, *see Taylor*, 880 F.2d at 1045.

The same could be said of Defendants Flores, who is only alleged to have been "responsible for supervising the provision of adequate medical care at Corcoran," FAC ¶ 8; Friederichs, who is alleged to have been a physician employed at the correctional facility in Soledad, *id.* ¶ 9; and Nyenke, who is alleged to have been a physician at Corcoran State Prison, *id.* ¶ 10. Without any allegations implying that these Defendants knew of Plaintiff's condition or deliberately ignored it, Plaintiff has failed to create a plausible claim against them. *See Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.") (citation and quotations omitted).

Only three named Defendants are alleged to have ever seen Plaintiff: Defendants Dayalan, Saylor, and Kahng. Plaintiff claims that Dr. Dayalan saw him on August 30, 2005. *Id.* ¶ 21. Plaintiff alleges that at his examination Dayalan referred him to podiatry for diabetic shoes and noted that Plaintiff needed to see an orthopedist to address issues with his Charco Joint. *Id.* Plaintiff alleges that he never received any follow-up care based on Dayalan's recommendations before he was transferred to a different prison on April 13, 2006. *Id.* Dr. Saylor saw Plaintiff on April 14, 2006, diagnosed him with diabetes and enrolled him in a chronic care program. *Id.* ¶ 22.

14

1   Dr. Kahng examined Plaintiff on May 18, 2006 and issued him a wheelchair. *Id.* In his opposition memorandum, Plaintiff argues that these facts imply Saylor and Kahng failed to follow up on Dayalan's recommendations. P.'s Opp'n 10.

Although the alleged delay in treatment is troubling, Plaintiff has not pled facts alleging that any of these individuals both knew of his condition and purposefully delayed his treatment. Delay of treatment alone is not usually enough to show deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Without pinning responsibility on specific individuals, Plaintiff cannot survive a motion to dismiss. *See Minh v. Giurbino*, 225 Fed. Appx. 674, 676 (9th Cir. 2007) (citing *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.")). Plaintiff claims that Dayalan knew of his need for orthopedic medical care but does not allege that he delayed it. From the allegations made in the complaint, it appears that Dayalan fulfilled his individual responsibility to Plaintiff by indicating that he needed to see an orthopedist. Without allegations that Dayalan performed an intentional act or purposefully refrained from acting so as to delay Plaintiff's receipt of treatment, even a liberal construction of the complaint does not raise a plausible claim for relief. Even less is alleged in connection with doctors Saylor and Kahng. Plaintiff does not claim that they knew of either his need for a camwalker or the increased pain or deformity in his right foot. Plaintiff's claims against them are, therefore, also deficient.

In cases where the plaintiff alleges delay in medical treatment and survives a dispositive motion, the plaintiff makes allegations connecting those with knowledge of his medical need to the deliberately indifferent delay in treatment. For example, in *Hunt v. Dental Dep't*, 865 F.2d 198 (9th Cir. 1989), where the Ninth Circuit reversed the district court's granting of summary judgment on behalf of defendants in a § 1983 deliberate indifference case, the plaintiff not only "alleged . . . that there was a delay of more than three months before [he] was treated," *id.* at 201, but also "alleged . . . that the prison officials were aware of his bleeding gums, breaking teeth and his inability to eat properly, yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted." *Id.* at 200. The court concluded from these allegations

15
Case No.: 09-CV-03226-LHK
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

that "[g]iven the serious dental problems which [the plaintiff] alleges he repeatedly complained about, this delay appears to have been more than an isolated occurrence of neglect." *Id.*; *see also Wallin v. Norman*, 317 F.3d 558 (6th Cir. 2003) (affirming denial of motion to dismiss where plaintiff complained of an ailment to a prison doctor and alleged eight day delay in proper treatment for urinary tract infection).

Here, Plaintiff has not alleged that he complained of his condition to anyone. Nor has he alleged that anyone, besides Dayalan, was explicitly aware of his foot condition. And as to Dayalan, it appears from the complaint that he did take some action with regard to Plaintiff's need for treatment. Whether he deliberately refrained from taking further action or intentionally interfered with others following up on his recommendations is not pled and cannot reasonably be inferred from the complaint. Thus, Plaintiff has not alleged facts that his lack of care was "more than an isolated occurrence of neglect."

Even though Plaintiff's FAC fails to state a claim on which relief can be granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (citations and quotations omitted); *see also Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990). Because it may be possible for Plaintiff to correct the defects in his complaint, this Court grants Plaintiff leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with leave to amend. Plaintiff shall file an amended complaint, if any, within thirty days of this order.

**IT IS SO ORDERED.**

Dated: October 19, 2010

_____
LUCY H. KOH
United States District Judge