1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT SANTANA,<br><br>            Plaintiff,<br><br>    v.<br><br>N. DAYALAN, M.D., C. NYENKE, M.D., J.<br>KAHNG, M.D., K. SAYLOR, M.D., and DOES<br>1 though 50, inclusive,<br><br>            Defendants | Case No.: 09-CV-03226-LHK<br><br>ORDER DENYING MOTION TO<br>DISMISS; DISMISSING DEFENDANTS<br>KAHNG AND SAYLOR WITHOUT<br>PREJUDICE |

Defendants N. Dayalan and C. Nyenke move to dismiss Plaintiff Robert Santana's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court heard oral argument on February 17, 2011. Having considered the submissions and arguments of the parties, the Court DENIES Defendants' motion to dismiss. The Court also dismisses Defendants Kahng and Saylor without prejudice based on Plaintiff's failure to serve them within the time required by Rule 4(m).

### I. Background

#### A. Factual Background

In January 2005, Plaintiff Robert Santana began serving a six-year sentence within the California State Prison system. SAC ¶ 14. At the time, Plaintiff suffered from diabetic neuropathy, which affected his right foot and ankle. SAC ¶ 13. Specifically, Plaintiff had, and still

**United States District Court**
For the Northern District of California

has, a condition known as Charcot Joint, in which the bones of his right ankle are unsupported.  *Id.*

To provide support and regulate blood flow in his right ankle, Plaintiff wore a "camwalker," a

custom-designed orthotic device that fit his right foot and ankle.  *Id.*

On January 31, 2005, Plaintiff was transferred from Monterey County Jail to North Kern

State Prison.  SAC ¶ 14.  Upon arrival at North Kern, Plaintiff's camwalker was taken from him,

apparently because the metal contained in the camwalker presented a security threat.  *Id.*  At North

Kern, medical personnel took an X-ray of Plaintiff's foot, which was interpreted by radiologist T.

Maclennan.  SAC ¶ 15.  Maclennan noted a marked deformity of Plaintiff's ankle and indicated

that follow-up X-rays should be considered, but Plaintiff received no further medical care while at

the North Kern facility.  SAC ¶ 15.

Plaintiff was subsequently transferred to the Correctional Training Facility located in

Soledad, California.  SAC ¶ 16.  Once at Soledad, Plaintiff was initially examined by Doctor

Friederichs, who referred Plaintiff to the orthopedic clinic and stated that Plaintiff might benefit

from an orthotic shoe or ankle brace.  SAC ¶¶ 16-17.  After this initial consultation, Defendant

Dayalan examined Plaintiff twice, first on July 29, 2005, and then on August 30, 2005.  SAC

¶¶ 16-17.  At the July 29 examination, Defendant Dayalan noted that an orthopedic specialist

would need to determine the proper device for Plaintiff's condition and informed Plaintiff that he

would have to wait six to nine months before his orthopedic needs were met.  SAC ¶ 16.  On

August 30, 2005, Defendant Dayalan again noted that Plaintiff needed to be seen by an orthopedist

to prevent skin loss associated with his condition and to address his need for an orthotic brace.

SAC ¶ 17.  He also noted that a podiatry referral for diabetic shoes was indicated.  *Id.*  While at

Soledad, however, Plaintiff received no further care or follow-up from Dayalan's

recommendations.  *Id.*

On April 13, 2006, Plaintiff was transferred to the California State Prison at Corcoran.

SAC ¶ 19.  The next day, Defendant Saylor examined Plaintiff and diagnosed him with diabetes.

*Id.*  Thereafter, Plaintiff was examined three times by Defendant Kahng.  SAC ¶ 20.  In May 2006,

Defendant Kahng confirmed that Plaintiff suffered from Charcot Joint, but concluded that Plaintiff

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT
PREJUDICE

**United States District Court**
For the Northern District of California

did not need to be referred to a podiatrist at that time. *Id.* Nonetheless, on July 5, 2006, Plaintiff saw David Smith, M.D., an orthopedic specialist. SAC ¶ 21. Dr. Smith found that Plaintiff had a "completely destroyed right ankle joint related to his diabetes" and confirmed that it was a Charcot Joint. *Id.* He referred Plaintiff to an orthotics clinic, and on August 11, 2006, Plaintiff was assessed at the clinic and measured for a new camwalker. SAC ¶¶ 21-22. On September 19, 2006, Plaintiff received the new camwalker. SAC ¶ 23. However, as the camwalker did not fit and irritated Plaintiff's skin, it was of no benefit to him. *Id.* At that time, Plaintiff also discovered that his foot had become widened and swollen in a way that prevented him from using the new camwalker. SAC ¶ 24.

Plaintiff alleges that after he discovered that the new camwalker provided no benefit, he continued to seek further care for his swollen and deformed foot. SAC ¶ 25. While at Corcoran, he remained under the care of Defendants Saylor, Kahng, and Nyenke. *Id.* On August 11, 2006, Defendant Kahng noted that Plaintiff exhibited a "Charcot collapse," and on April 12, 2007, Defendant Nyenke noted the onset of an ulcer on Plaintiff's right foot. *Id.* Plaintiff alleges that his right foot continued to deteriorate in the absence of an appropriate camwalker, and his foot became increasingly swollen and deformed. *Id.* Plaintiff was released from the California State Prison system on July 19, 2007, and he sought private medical care on August 6, 2007. SAC ¶ 26. Plaintiff alleges that his private medical provider informed him that the care he received in prison was substandard and caused his foot and ankle to widen and swell to such an extent that his foot required surgical repair. *Id.* In his opposition brief, Plaintiff states that he has recently learned that his right foot will need to be amputated at the shin level.

### B. Procedural Background

Plaintiff initiated the instant action on July 15, 2009. In his original Complaint, Plaintiff named only the California Department of Corrections and Rehabilitation ("CDCR") as a Defendant, and asserted claims of negligence, violations of the Americans with Disabilities Act, and deliberate indifference to Plaintiff's medical needs in violation of Plaintiff's Eighth Amendment rights. Defendant CDCR moved to dismiss the Complaint on grounds that Plaintiff

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1    failed to identify a statutory basis for its negligence claim, the ADA claim was time-barred, and the

2    Eleventh Amendment barred Plaintiff's claim for deliberate indifference.  The Court granted the

3    motion to dismiss and gave Plaintiff leave to amend his claims for negligence and deliberate

4    indifference.  Order Granting Def.'s Mot. to Dismiss with Leave to Amend, ECF No. 16.

5           Plaintiff then filed a First Amended Complaint ("FAC") that named nine individual

6    defendants and alleged a single claim, pursuant to 42 U.S.C. § 1983, for deliberate indifference to

7    Plaintiff's health and safety in violation of Plaintiff's constitutional rights.  Defendants moved to

8    dismiss the FAC, on grounds that Plaintiff's claim was time-barred and failed to state a claim for

9    deliberate indifference.  Based on the facts presented in Plaintiff's pleading, the Court did not find

10   his claim time-barred, but dismissed the FAC for failure to plead facts sufficient to establish

11   deliberate indifference to Plaintiff's medical needs.  Order Granting Def.'s Mot. to Dismiss, ECF

12   No. 47.  The Court granted leave to amend, and Plaintiff subsequently filed a Second Amended

13   Complaint ("SAC").  The SAC names as defendants four physicians employed at California State

14   Prisons: Defendants Dayalan, Nyenke, Kahng, and Saylor.  The SAC alleges a single cause of

15   action, pursuant to 42 U.S.C. § 1983, for deliberate indifference to Plaintiff's health and safety.  Of

16   the four physician defendants named in the SAC, only Defendants Dayalan and Nyenke have been

17   served and have appeared in this action.  Defendants Dayalan and Nyenke now move to dismiss the

18   SAC for failure to state a claim.

19   **II. Legal Standard**

20          A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

21   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

22   whether the complaint is sufficient to state a claim, the court must accept as true all of the factual

23   allegations contained in the complaint, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), and draw all

24   reasonable inferences in favor of the plaintiff.  *Catholic League for Religious and Civil Rights v.*

25   *City and County of San Francisco*, 567 F.3d 595, 599 (9th Cir. 2009).  However, the court need not

26   accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit"

27   or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

28

4

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT
PREJUDICE

1    inferences." *St. Clare v. Gilead Scis., Inc.* (*In re Gilead Scis. Sec. Litig.*), 536 F.3d 1049, 1055 (9th

2    Cir. 2008).  While a complaint need not allege detailed factual allegations, it "must contain

3    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

4    *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A

5    claim is facially plausible when it "allows the court to draw the reasonable inference that the

6    defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.

7    **III. Discussion**

8          **A.  Motion to Dismiss**

9          Under the Eighth and Fourteenth Amendments, the government has an "obligation to

10   provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S.

11   97, 103 (1976).  This does not mean that every claim of inadequate medical treatment in prison

12   states an Eighth Amendment violation.  *Id.* at 105.  To maintain an Eighth Amendment claim, a

13   plaintiff must show "deliberate indifference to serious medical needs."  *Id.* at 104.  The Ninth

14   Circuit has articulated a two-part test for deliberate indifference in this context.  *Jett v. Penner*, 439

15   F.3d 1091, 1096 (9th Cir. 2006).  First, the plaintiff must show "serious" medical needs by

16   demonstrating that "the failure to treat [his] condition could result in further significant injury or

17   the 'unnecessary and wanton infliction of pain.'"  *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir.

18   1991), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

19   Second, the plaintiff must show that the defendant's response to his need was deliberately

20   indifferent.  *Jett*, 439 F.3d at 1096.  The deliberate indifference standard applied to Eighth

21   Amendment claims "entails something more than mere negligence," but "something less than acts

22   or omissions for the very purpose of causing harm or with knowledge that harm will result."

23   *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Under this standard, "an inadvertent failure to

24   provide adequate medical care" or "negligen[ce] in diagnosing or treating a medical condition" is

25   not sufficient to establish an Eighth Amendment violation.  A prison official acts with deliberate

26   indifference only if the official "knows of and disregards an excessive risk to inmate health and

27   safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

28

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT PREJUDICE

1      In this case, Plaintiff argues that each of the named defendants had subjective knowledge of

2  the risk of serious harm to Plaintiff's foot and ankle, but nonetheless refused to provide Plaintiff

3  the immediate care he needed.  Because Plaintiff seeks damages against individual prison

4  employees, Plaintiff must plead facts specific to each individual defendant which plausibly suggest

5  that the individual defendant acted with deliberate indifference.  *See Leer v. Murphy*, 844 F.2d 628,

6  633-34 (9th Cir. 1988).  In determining whether Plaintiff has met this standard, the court must

7  "scrutinize the particular facts and look for substantial indifference in the individual case,

8  indicating more than mere negligence or isolated occurrences of neglect." *Wood v. Housewright*,

9  900 F.2d 1332, 1334 (9th Cir. 1990).  Accordingly, the Court will analyze the facts alleged as to

10  each Defendant in turn.

### 1.    Defendant Dayalan

12      In the SAC, Plaintiff alleges that Defendant Dayalan examined Plaintiff twice at the

13  Soledad prison facility, once on July 29, 2005, and again on August 30, 2005.  SAC ¶¶ 16-17.

14  Plaintiff alleges that at the time of these examinations, Dayalan had Plaintiff's medical chart, which

15  included a radiological study of Plaintiff's ankle and records of an initial consultation by Dr.

16  Friederichs.  SAC ¶ 17.  The radiological study indicated that Plaintiff had a "marked deformity at

17  the ankle" and suggested that further X-rays be considered.  SAC ¶ 15.  The records from Dr.

18  Friederichs's consultation indicated that Plaintiff could possibly benefit from an orthotic shoe or

19  brace, referred Plaintiff to an orthopedic clinic, and proposed that Plaintiff see an orthopedic

20  specialist named Dr. Pompan.  SAC ¶¶ 16-17.  After examining Plaintiff, Dayalan confirmed that

21  Plaintiff needed to be seen by an orthopedist and noted that a podiatry referral for diabetic shoes

22  was indicated.  SAC ¶¶ 16-17.  However, Dayalan informed Plaintiff that he would have to wait six

23  to nine months before his orthopedic needs would be met, and when Plaintiff was transferred out of

24  Soledad on April 13, 2006, he still had not seen a podiatrist or otherwise received follow-up care.

25  SAC ¶¶ 16-17.

26      Plaintiff argues that these facts raise a reasonable inference that Dayalan knew of Plaintiff's

27  immediate need for orthopedic care and willfully disregarded Plaintiff's medical needs by delaying

28

United States District Court
For the Northern District of California

6

follow-up care and allowing nine months to elapse before Plaintiff's foot was reexamined.  It is well-established that the intentional denial, delay, or interference with medical treatment can constitute deliberate indifference that violates the Eighth Amendment.  *Estelle*, 429 at 104.  Although a delay in treatment, standing alone, does not constitute an Eighth Amendment violation, *see Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985), a plaintiff may make out an Eighth Amendment claim if the delay caused further harm and the defendant acted with deliberate indifference to the risk of harm posed by the delay.  *McGuckin*, 974 F.2d at 1060.  Typically, plaintiffs make such a showing by alleging that they complained of a need for treatment, were visibly in pain, or were otherwise in obvious need of prompt medical care.  *See, e.g.*, *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff alleged that defendants were aware of his severe pain, "bleeding gums, breaking teeth and his inability to eat properly"); *McMaster v. Thomas*, No. CV 1-04-6453-FRZ, 2010 WL 3785571, at *3 (E.D. Cal. Sept. 24, 2010) (plaintiff alleged that defendants knew his ankle was fractured based on x-rays and medical records, but told plaintiff it was not fractured, resulting in a long delay in treatment).  A plaintiff may rely on "circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm," *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003), and need not allege that the harm from the delay was substantial or significant.  *McGuckin*, 974 F.2d at 1060.

Defendants argue that the facts alleged do not plausibly suggest that Plaintiff had an immediate need for orthotic care in the summer of 2005.  They note that Plaintiff does not explicitly allege that he was in pain when Dayalan examined him in July and August of 2005, or that he informed Dayalan that he needed immediate care.  Nonetheless, it appears that Dayalan knew a great deal about Plaintiff's medical condition, and the facts in front of him suggested that Plaintiff had serious medical needs that should be promptly addressed.  Taking the allegations in the SAC as true, Dayalan knew that the camwalker Plaintiff wore to support his ankle had been taken away and that X-rays showed a "marked deformity" of Plaintiff's ankle.  SAC ¶¶ 15, 17.  Dayalan also knew that Dr. Friederichs had considered Plaintiff's condition serious enough to

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT PREJUDICE

United States District Court
For the Northern District of California

1   warrant a referral to an orthopedic clinic and an orthopedic specialist, but that Plaintiff had not yet

2   been seen at the clinic or by a specialist.  Additionally, based on his own examination, Dayalan

3   determined that Plaintiff suffered from diabetes-related Charcot Joint and needed to see an

4   orthopedic specialist to prevent skin loss and other issues related to his condition.  He also

5   determined that Plaintiff needed to see an orthopedist and podiatrist to obtain an appropriate

6   orthotic device and/or diabetic shoes.  SAC ¶¶ 15-17.  Based on these facts, it is entirely plausible

7   that Dayalan knew that Plaintiff had a serious medical condition.  More importantly, it is also

8   plausible that Dayalan knew that Plaintiff could suffer from complications, such as skin loss, if his

9   foot was not treated in a prompt manner.  *Cf. Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th

10  Cir. 1989) (finding that defendants may have been deliberately indifferent where they "disregarded

11  evidence of complications to which they had been specifically alerted").  Yet even though Plaintiff

12  had already been waiting to see a specialist since his examination by Dr. Friederichs, Dayalan told

13  Plaintiff that his medical needs would not be met for another six to nine months.  SAC ¶ 16.  Based

14  on these facts and reasonable inferences, Plaintiff makes a plausible argument that Dayalan knew

15  of Plaintiff's need for immediate orthopedic care and acted with deliberate indifference by

16  authorizing an additional six- to nine-month delay in treatment.

17          The Court is mindful of the fact that Dayalan may not have been in a position to offer

18  Plaintiff an immediate appointment with a specialist, and there may not have been alternative

19  treatments that he could have provided in the interim.  As the factual record is developed, it may

20  turn out that Dayalan could not offer immediate treatment or that the facts before him did not

21  indicate a need for immediate care.  *See Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989)

22  (reversing grant of summary judgment, but acknowledging that development of the factual record

23  could fail to demonstrate liability).  At this stage of proceedings, however, the Court is required to

24  take the allegations as true and draw all reasonable inferences in favor of Plaintiff.  *Catholic*

25  *League for Religious and Civil Rights*, 567 F.3d at 599.  Under this standard, the Court finds that

26  the facts alleged indicate that Plaintiff's medical needs were serious, that his condition deteriorated

27  during his incarceration, and that Dayalan did not take steps to ensure that Plaintiff received

28

8

1   prompt medical treatment.  This is sufficient to survive a motion to dismiss.  Accordingly,

2   Defendants' motion to dismiss the claims against Defendant Dayalan is DENIED.

### 2.        Defendant Nyenke

4           Plaintiff's allegations against Defendant Nyenke are also sufficient to survive a motion to

5   dismiss.  The SAC alleges that Plaintiff remained under the care of Defendants Nyenke, Saylor,

6   and Kahng during his incarceration at the Corocoran facility, between April 2006 and July 2007.

7   SAC ¶ 25.  On July 5, 2006, Plaintiff finally saw an orthopedic specialist, who determined that

8   Plaintiff had a "completely destroyed right ankle joint related to his diabetes."  SAC ¶ 21.  Plaintiff

9   obtained a replacement camwalker, but soon discovered that it did not properly fit his widened and

10  swollen foot.  SAC ¶ 24.  Plaintiff alleges that he then continued to seek further care for "his now

11  greatly swollen and deformed foot."  SAC ¶ 25.  On April 12, 2007, Defendant Nyenke examined

12  Plaintiff and "noted an onset of ulcer to plaintiff's right foot."  *Id.*  Plaintiff alleges that despite this

13  observation, Nyenke disregarded Plaintiff's need for further medical care and refused to provide

14  the care necessary to prevent the continued eroding of his foot.  *Id.*  Taking these allegations as true

15  and construing the complaint in the light most favorable to Plaintiff, it appears that Nyenke knew

16  that Plaintiff was developing an ulcer and nonetheless declined to provide preventative treatment.

17  Whether Nyenke's failure to provide treatment was an act of deliberate indifference, mere

18  negligence, or a determination that nothing more could be done cannot be determined on the basis

19  of the pleadings alone.  *See Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite

20  knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways . . .

21  .").  On a motion to dismiss, therefore, Plaintiff's allegations are sufficient to state an Eighth

22  Amendment claim against Defendant Nyenke.  Accordingly, the motion to dismiss Plaintiff's

23  claims against Defendant Nyenke is DENIED.

### B.  Defendants Kahng and Saylor

25          In his opposition brief, Plaintiff addresses the merits of his claims against Defendants

26  Kahng and Saylor.  As Defendants Dayalan and Nyenke point out, neither of these Defendants has

27  been served or appeared in this case.  Federal Rule of Civil Procedure 4(m) provides that "[i]f a

28

9

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT
PREJUDICE

1  defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the

2  action without prejudice against that defendant or order that service be made within a specified

3  time."  Plaintiff filed this action on July 15, 2009, and filed an amended complaint naming

4  Defendants Kahng and Saylor on December 3, 2009.  Plaintiff's 120-day period to serve these

5  Defendants is thus long past.  At the motion hearing, Plaintiff's counsel indicated that he had not

6  been able to locate current addresses for Defendants Kahng and Saylor and agreed that dismissal of

7  these Defendants under Rule 4(m) was appropriate.  Accordingly, the Court hereby DISMISSES

8  Defendants Kahng and Saylor without prejudice for failure to serve them in the time required by

9  Rule 4(m).

10  **IV. Conclusion**

11       For the foregoing reasons, the Court DENIES Defendants' motion to dismiss and

12  DISMISSES Defendants Kahng and Saylor without prejudice.  The case will proceed on the

13  schedule adopted at the Case Management Conference.

14  **IT IS SO ORDERED.**

15

16  Dated: February 21, 2011     _____

17                               LUCY H. KOH
                                 United States District Judge
18

19

20

21

22

23

24

25

26

27

28

Case No.: 09-CV-03226-LHK
ORDER DENYING MOTION TO DISMISS; DISMISSING DEFENDANTS KAHNG AND SAYLOR WITHOUT
PREJUDICE